ELECTRONIC

**August 30, 2007**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO.: 06-21032 CACE 02

**LIDIA BOLANDER,**    **07-CV-80789 Hurley/Hopkins**
Plaintiffs

v.

**TASER INTERNATIONAL, INC., DGG TASER, INC.,** a Florida
Corporation; **THE CITY OF DELRAY BEACH,**
By and through The City of Delray Beach Police
Department, **FRANK CASAREZ,** Individually
and as Agent and Police Officer of the City of
Delray Beach Police Department, Badge # 643;
**STEVEN HYNES,** Individually, and as Agent and
Police Officer of the City of Delray Beach Police
Department, Badge Police Department, Badge # 795

Defendants.
_____/

## DEFENDANTS' PETITION FOR REMOVAL

COME NOW, **THE CITY OF DELRAY BEACH,** By and through The City of

Delray Beach Police Department, **FRANK CASAREZ,** Individually and as Agent

and Police Officer of the City of Delray Beach Police Department, Badge # 643;

**STEVEN HYNES,** individually, and as Agent and Police Officer of the City of

Delray Beach Police

Department, Badge Police Department, Badge # 795 by and through their undersigned

counsel and, pursuant to Title 28 USC Section 1441 and Section 1446, hereby remove

this action now pending in the Seventeenth Judicial Circuit and bearing the caption Lidia

Bolander, et. al. V. **THE CITY OF DELRAY BEACH,** By and through The City of

Delray Beach Police Department, **FRANK CASAREZ,** Individually  and as Agent

1

and Police Officer of the City of Delray Beach Police Department, Badge # 643;

**STEVEN HYNES,** Individually, and as Agent and Police Officer of the City of

Delray Beach Police Department, Badge Police Department, Badge # 795 ,

Defendants, CASE NO.: CASE NO. 06-21032 CACE 02 and state as follows:

1. On August 17th the plaintiff's served this lawsuit upon the City of
Delray Beach City Attorney's Office, and the other moving defendants.

2. On information and belief, the two nonmoving defendants, Taser
International and DGG were also served on August 17th.

3. Counts 11, 12, and 13 are allegations of violations of civil rights by
various defendants, and thus the case is thus one brought pursuant the Civil
Rights Act of 1870, 42 U.S.C. § 1983, et seq.

7. Pursuant to Title 28 USC §1331, a district court shall have original
jurisdiction over all civil actions arising under the Constitution, laws or treaties of
the United States.

8. Pursuant to 28 USC § 1343 (a)(3), the district court shall have original
jurisdiction of any civil action authorized by law to be commenced by any person
to redress the deprivation under color of any state law, statute, ordinance,
regulation, custom, or usage of any right, privilege or immunity secured by the
Constitution of the United States or by an act of Congress providing for equal
rights of citizens or of all persons within the jurisdictions of the United States.

9. While filled in Broward County, the actions complained of occurred (at
least the deployment of the taser) occurred in Palm Beach County, and this

2

matter is properly removable to the United States District Court for the Southern District of Florida sitting in its West Palm Beach Division.

13.     Pursuant to 42 USC §1446(b) the Notice of Removal of a civil action shall be filed within thirty (30) days after receipt by the Defendant through service or otherwise, of a copy of the initial pleading. The complaint having been served upon these defendants no earlier than August 17th, this Notice of Removal is timely.

15.     Pursuant to 28 USC §1446(a) a copy of all process, pleadings and orders served upon the Defendants are attached.  The only item served upon these defendants is the complaint, attached hereto as Exhibit "A".

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by U.S. Mail to **Douglas J. Petro, Esq., THE LAW OFFICES OF BELL AND ROPER, P.A.,** 2816 East Robinson Street, Orlando, Florida 32803 and to **William D. Tucker, Esq., THE LAW OFFICES OF WILLIAM D. TUCKER, P.A.,** 718 N.E. 2nd Avenue, Ft. Lauderdale, Florida 33304 this __30th__ day of August 2007.

                            FRED H. GELSTON, P.A.
                            601 N. Dixie Highway, Ste. C
                            P.O. Box 3546
                            West Palm Beach, FL 33402-3546
                            (561) 832-5999
                            (561) 832-2533 fax

                            FRED H. GELSTON, ESQ.
                            FLA. BAR NO.: 173506

3

LIDIA BOLANDER, Individually as the surviving spouse of Timothy Bolander, and as Personal Representative of THE ESTATE OF TIMOTHY BOLANDER; VICTORIA BOLANDER, surviving minor child of Timothy Bolander, by and through her mother Lidia Bolander, JODY HERSEY, surviving mother of Timothy Bolander, and TIMOTHY BOLANDER, as surviving father of Timothy Bolander

        Plaintiffs,

vs.

TASER INTERNATIONAL, INC.; DGG TASER, INC., a Florida Corporation; THE CITY OF DELRAY BEACH, by and through the Delray Beach Police Department, FRANK CASAREZ, Individually and as Agent and Police Officer of the City of Delray Beach Police Department, Badge # 643; STEVEN HYNES, Individually, and as Agent and Police Officer of the City of Delray Beach Police Department, Badge # 795

        Defendants.        /

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

Case Number: 06-1032-CACE 02
Judge: Victor Tobin

**A TRUE COPY**
HOWARD C. FORMAN
CLERK OF CIRCUIT COURT

**AUG 17 2007**

*FIRST AMENDED COMPLAINT*

Plaintiff, LIDIA BOLANDER, individually as surviving spouse and as Personal Representative of the

Estate of TIMOTHY BOLANDER, deceased, for and on behalf of the survivors of the Estate of TIMOTHY

BOLANDER, as defined by the Wrongful Death Act, VICTORIA BOLANDER, minor surviving child, and JODY

HERSEY, and TIMOTHY BOLANDER, surviving parents, and the ESTATE OF TIMOTHY BOLANDER, by and

through their undersigned counsel, sue the Defendants, and state:

## I. PARTIES JURISDICTION AND PRESUIT REQUIREMENTS

1.    Plaintiff, LIDIA BOLANDER, as Personal Representative of the Estate of TIMOTHY BOLANDER,

     deceased, for and on behalf of the survivors of the Estate of TIMOTHY BOLANDER, including the

     following: LIDIA BOLANDER, surviving spouse VICTORIA BOLANDER, minor surviving child, and

     JODY HERSEY, and TIMOTHY BOLANDER, surviving parents, at all times material to this action were

     residents of Florida.

2.    At all times material hereto, Defendant, TASER INTERNATIONAL, INC., was/is a foreign corporation

     authorized to do business and doing business in Florida.

3.    At all times material hereto, Defendant, DGG TASER, INC., was/is a Florida corporation authorized to do

Page -1-

business and doing business in Palm Beach County, Florida.

4. At all times hereinafter mentioned, the Defendant, CITY OF DELRAY BEACH, is a municipal corporation organized and existing under and by virtue of the laws of the State of Florida.

5. Defendant, OFFICER FRANK CASAREZ badge # 643 ("CASAREZ"), at all times material to this action, was a police officer employed by the CITY OF DELRAY BEACH/DELRAY BEACH POLICE DEPARTMENT.

6. Defendant, OFFICER STEVEN HYNES, badge # 795  ("HYNES"), at all times material to this action, was a police officer employed by the CITY OF DELRAY BEACH/DELRAY BEACH POLICE DEPARTMENT.

7. The city of Delray Beach is liable vicariously for the actions of Defendants CASAREZ and HYNES.

8. Defendant DELRAY BEACH is affirmatively linked to the behavior of Defendants CASAREZ and HYNES in the sense that DELRAY BEACH's actions or inactions can be characterized as supervisory encouragement, condonation or acquiescence or gross negligence . . . amounting to deliberate indifference over the Plaintiff's rights and guarantees under the law.

9. Defendants CASAREZ and HYNES on or about December 23, 2004, acting within the course and scope of their duties with DELRAY BEACH discharged their Tasers into Timothy Bolander causing injuries which ultimately killed Timothy Bolander.  Defendants CASAREZ and HYNES actions and inactions on December 23, 2004, amounted to deliberate indifference to the Plaintiffs' rights and guarantees under the law.

10. Defendant TASER INTERNATIONAL, INC., manufactured and placed into the stream of commerce the Tasers used by Defendants CASAREZ and HYNES to kill Timothy Bolander.

11. Defendant DGG Taser, Inc., sold to Defendant DELRAY BEACH the tasers which were used by Defendants CASAREZ and HYNES to kill Timothy Bolander.

12. Defendant DGG Taser, Inc., at all times material hereto, acted as exclusive agent for Defendant TASER INTERNATIONAL, and as such Defendant Taser International is vicariously liable for the acts of DGG Taser, Inc.

13. This is a civil action arising out of the death of the Plaintiff's decedent, TIMOTHY BOLANDER, and

Page -2-

asserting causes of action   against different defendants for wrongful death, products liability,  negligence, strict liability, contract and violations of Mr. TIMOTHY BOLANDER's civil rights under   the United States Constitution, specifically the Fourth and Fourteenth Amendments thereto, and violations of 42 United States Code  Sections 1983, 1985 and 1988 as well as violations of Florida Statutes and common law.

14.     This action is brought by the decedent's Personal Representative, who shall recover for the benefit of the decedent's survivors, LIDIA BOLANDER, surviving spouse VICTORIA BOLANDER, minor surviving child, and JODY HERSEY, and TIMOTHY BOLANDER, surviving parents, as defined by the Wrongful Death Act and the ESTATE OF TIMOTHY BOLANDER, all damages  specified in the Wrongful Death Act.

15.     This action seeks monetary damages against Defendants in excess of Fifteen Thousand Dollars ($15,000) exclusive of costs, interest and attorney's fees.

16.     At all times material hereto regarding the time of the incidents forming the basis of this action, the Plaintiffs, JODY HERSEY, and TIMOTHY BOLANDER, were the parents of TIMOTHY BOLANDER, and were residents of Brevard County, Florida.

17.     At all times material hereto, the Plaintiff, LIDIA BOLANDER, was and is the Personal   representative of the ESTATE OF  TIMOTHY BOLANDER, deceased.

18.      At all times material hereto, the statutory survivors of TIMOTHY BOLANDER, deceased, pursuant to Section 768.18, Florida  Statutes are LIDIA BOLANDER, surviving spouse VICTORIA BOLANDER, minor surviving child, and JODY HERSEY, and TIMOTHY BOLANDER, surviving parents.

19.     Pursuant to Florida Statutes, the potential beneficiaries of TIMOTHY BOLANDER, deceased, are LIDIA BOLANDER, surviving spouse VICTORIA BOLANDER, minor surviving child, and JODY HERSEY, and TIMOTHY BOLANDER, surviving parents, as defined by the Wrongful Death Act and the ESTATE OF TIMOTHY BOLANDER, deceased.

20.     Plaintiff has otherwise complied with the pre-suit screening investigation and notice requirements imposed by virtue of the provisions of Florida Statutes, and all other conditions precedent to the bringing of this action have been performed, occurred, or have been waived.

Page -3-

21.    The Defendants, and each of them, have rejected or denied the claims of the Plaintiffs herein asserted in writing, and the pre-suit screening period has expired.

## II.

## FACTS

22.    On or about December 23, 2004, City of Delray Beach Police officers CASAREZ and HYNES responded to the decedent's home in response to a 911 call made by Plaintiff LIDIA BOLANDER.

23.    The 911 operator who took the call from LIDIA BOLANDER was acting within the course and scope of her agency relationship with DELRAY BEACH so that it can be said that any information imparted to the 911 operator during the 911 call was know by DELRAY BEACH.

24.    LIDIA BOLANDER advised the 911 operator that the decedent was acting strangely and "probably" was on drugs, and requested that the paramedics be dispatched., and that the police "were not needed".

25.    Defendants CASAREZ and HYNES went to decedent's home in response to the 911 call.

26.    At the time Defendants CASAREZ and HYNES arrived, BOLANDER was under the influence of cocaine, opiates, or other illegal drugs, but BOLANDER did not have lethal amounts of any drugs in his system.

27.    CASAREZ and HYNES encountered decedent at the scene and noted him to be acting strangely, and consistent with him acting under the influence of cocaine, opiates, or other illegal drugs, such that CASAREZ and HYNES knew or should have known that the decedent was under the influence of cocaine, opiates, or other illegal drugs.

28.    Within three minutes of Defendants CASAREZ and HYNES encountering the decedent, he was dead; Defendants CASAREZ and HYNES shot the decedent with their M26 Advanced Tasers ten times, sending 50,000 volts into him for a consecutive total of 56 seconds causing injuries which rendered decedent unconscious, caused him to go into ventricular fibrillation, and resulted in decedent's death. The number of taser shots which hit the decedent, the electrical current from the taser which entered the decedent's body, and the drugs which decedent had ingested, alone or in combination, caused or contributed to decedent's death.

29.    Defendants CASAREZ and HYNES' use of the taser on the decedent constituted excessive force.

30.    Defendant DELRAY BEACH knew or should have known that tasering individuals under the influence of

Page -4-

drugs such as the decedent, and in the manner in which the decedent was tasered would lead to serious injury, death.

31.    The training provided by Defendant DELRAY BEACH to Defendants CASAREZ and HYNES with respect to its use of force policies and procedures, and with respect to its use of Taser policies and procedures directly and proximately caused TIMOTHY BOLANDER's death.

32.    The training provided by Defendant DELRAY BEACH to Defendants CASAREZ and HYNES with respect to its use of force policies and procedures, and with respect to its use of Taser policies and procedures was so inadequate and wrongful that it can be said that Defendant DELRAY BEACH was deliberately indifferent to the rights of those with whom its police officers, including Defendants CASAREZ and HYNES, came into contact.

33.    Defendant TASER INTERNATIONAL INC., manufactured the Taser which Defendants DELRAY BEACH, CASAREZ, and HYNES used to cause decedent Timothy Bolander's death.

34.    Defendant DGG sold the tasers to DELRAY BEACH under an exclusive distribution arrangement with TASER such that DELRAY BEACH could not purchase tasers from any source but Defendant DGG. *See* Exhibit A attached hereto, a 6-27-2002 letter from TASER INTERNATIONAL, INC., to DELRAY BEACH to this effect.

35.    Defendants TASER and DGG knew or should have known that shooting individuals under the influence of drugs such as the decedent, and in the manner in which the decedent was shot would lead to serious injury, death.

36.    Defendants TASER and DGG failed to properly label and notify Defendants DELRAY BEACH CASAREZ, and HYNES, that individuals who, like the decedent, had or were suspected of having cocaine, opiates, or other similar drugs in their bloodstream, should not be shot with a taser at all and/or that they should not be shot the large number of times that the decedent had been shot.

37.    Taser International's electronic weapons are marketed and sold to law enforcement agencies throughout the State of Florida, including the City of DELRAY BEACH Police Department.

38.    Taser International began operations in Arizona in 1993 for purposes of developing and manufacturing non-lethal, self-defense weapons and began marketing its Advanced Taser Product line to law enforcement

in 1999.

39.  The Advanced Taser Product weapon line consists of three versions: the M26, the M18, and X26. The M26 is more powerful than the M18 and X26 and is the product line most frequently sold to law enforcement. The M26 is also the product line sold to the City of DELRAY BEACH and DELRAY BEACH Police Department.

40.  The Advanced Taser is not considered a "firearm" by the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives and, as such, no firearms regulations apply to the sale or distribution of the weapons.

41.  The Advanced Taser M26 is an electric weapon which uses compressed nitrogen to shoot two probes up to 15 - 21 feet. The probes are connected to the weapon by high-voltage insulated wire. Once contact with the target occurs, the Advanced Taser M26 transmits powerful electrical pulses along the wires and into the body of the target subject.

42.  The M26 Advanced Taser is designed to hit the target subject with 50,000 volts or 26 watts of electricity automatically fired for a period of five seconds, or longer if the trigger is held in the firing position.

43.  The hits police officers receive from the M26 Advanced Taser during training have little in common with the shocks given to suspects. In training, volunteers usually receive a single shock of a half-second or less whereas in the field, Tasers automatically fire for five seconds. If an officer holds down the M26 Advanced Taser trigger, the M26 will discharge longer.

44.  Taser International recommends the Advanced Taser be aimed at the subjects center of the chest and specifically warns against aiming the Advanced Taser at the eyes or face. Taser International does not specifically warn against strikes to the groin of male subjects.

45.  Taser International markets the Advanced Taser M26 as a non-lethal weapon which does not cause long term injuries. In fact, Taser's own literature sets forth the Advanced Taser M26 cannot cause long term injuries and can only cause short term injuries in the form of minor skin irritation.

46.  Despite the growing evidence of dangers and risks associated with Advanced Taser usage by law enforcement, including permanent injury and death, Taser International continues to market its weapons to law enforcement as safe with no risk of causing permanent injury or death.

47.  An estimated 100,000 police officers across the United States now carry Advanced Tasers, 20 times the

Page -6-

number in 2000. Taser International's net sales reflect wide spread distribution to law enforcement agencies around the United States. Taser International's net sales increased $43.2 million, or 177%, to $67.6 million for 2004 compared to $24.5 million for 2003.

48. Taser International's total market value, based Taser International's Common Stock sales price as reported by NASDAQ, as of March 15, 2005 was $825.5 million.

49. Despite the $67.6 million earned in net sales and $825.5 million in market value, Taser International spent only $823,593 in research and development in 2004 amidst growing claims Advanced Tasers are causing permanent injury and death.

50. Taser International has focused its recent marketing on the X26 Advanced Taser, opposed to the M26 Advanced Taser. The X26 Advanced Taser is a less powerful weapon which puts out a charge of only one-fourth that of the M26.

51. Taser International's primary safety studies on the M26, which is far more powerful than other electric guns like the M18 and X26, consist of tests on a single pig in 1996 and five dogs in 1999. Company paid researchers, not independent scientists, conducted the studies, which were never published in a peer-reviewed journal. During the period ending with TIMOTHY BOLANDER's death, Taser has no full-time medical director and never created computer models to stimulate the effect of its shocks, which are difficult to test in human clinical trials for ethical reasons.

52. Taser International has purposefully marketed Advanced Taser weapons as safe, non-lethal, and incapable of inflicting permanent injury.

53. Taser International's representations that the M26 Advanced Taser and Advanced Taser product line is safe and incapable of inflicting serious injury or death conflicts with the real world fact people have died and suffered permanent injuries after being struck by the M26 Advanced Taser and Advanced Taser product line.

54. A TASER discharge can cause Ventricular tachycardia and ventricular fibrillation. A taser discharge in a human can result in rapid ventricular tachycardia (VT) which can degenerate and into polymorphic VT that results in ventricular fibrillation. A taser discharge can cause serious ventricular arrhythmia in structurally normal hearts. TASER international and DGG TASER knew or should have known this and warned that

Page -7-

tasers should not be used on individuals under the influence of cocaine, opiods, or other drugs, like

Plaintiffs' decedent TIMOTHY BOLANDER.

## III.

### CAUSES OF ACTION

**COUNT 1**   **WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES: NEGLIGENT FAILURE TO WARN DEFENDANT AGAINST TASER INTERNATIONAL**

55.   Plaintiff re-adopts and re-alleges each and every allegation contained before Count I as if fully set forth herein.

56.   This is an action for damages against Defendant TASER INTERNATIONAL for the wrongful death negligent failure to warn in respect of of the Plaintiffs' decedent, TIMOTHY BOLANDER.

57.   Defendant, Taser International, designed, manufactured, assembled, distributed, marketed and sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of Delray Beach Police Department.

58.   Taser International expected and intended the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach such as persons arrested and/or detained by the Delray Beach Police Department.

59.   Taser International knew or should have known the M26 Advanced Taser is inherently dangerous or has dangerous propensities to the intended targets of the product, such as Decedent, Timothy Bolander.

60.   Taser International knew or should have known the M26 Advanced Taser is inherently dangerous or has dangerous propensities in that it distributes  50,000 volts or 26 watts of electricity to its target subjects for a period of at least five seconds and, as such, can cause permanent injury or death to its target subjects.

61.   Taser International owed a duty of reasonable care to foreseeable subject targets of its Taser weapon, such as Decedent, Timothy Bolander, to warn purchasers and users of the inherent dangers and propensities associated with the M26 Advanced Taser; namely the inherent danger and risk of permanent injury and death.

62.   A manufacturer or distributor who has a duty to warn a vendee/user of a product's potential dangers and yet

Page -8-

fails to do so may be liable for injuries sustained by foreseeable bystanders, including, and perhaps especially, foreseeable targets of that product. Defendant's duty, moreover, extends not only to the consumers or users of a product; it also extends to foreseeable "bystanders" who come within the range of danger.

63.     Taser International breached its duty of reasonable care owed to Decedent, Timothy Bolander by negligently failing to warn purchasers and users of the M26 Advanced Taser weapon. Specifically, Taser International failed to warn the City of Delray Beach Police Department and its officers of the inherent dangers and propensities associated with the M26 Taser weapon.

64.     As a result, Decedent, Timothy Bolander was killed.

65.     As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal representative of the ESTATE OF TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, TASER INTERNATIONAL, INC., whose actions and omissions caused the Plaintiffs'

Page -9-

decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

**COUNT 2      WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES: NEGLIGENT FAILURE TO WARN AGAINST DEFENDANT DGG TASER**

66.    Plaintiff re-adopts and re-alleges each and every allegation contained before Count I as if fully set forth herein.

67.    This is an action for damages against Defendant DGG TASER for the wrongful death negligent failure to warn in respect of the Plaintiffs' decedent, TIMOTHY BOLANDER.

68.    Defendant, DGG Taser, designed, manufactured, assembled, distributed, marketed and sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of Delray Beach Police Department.

69.    DGG Taser expected and intended the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach such as persons arrested and/or detained by the Delray Beach Police Department.

70.    DGG Taser knew or should have known the M26 Advanced Taser is inherently dangerous or has dangerous propensities to the intended targets of the product, such as Decedent, Timothy Bolander.

71.    DGG Taser knew or should have known the M26 Advanced Taser is inherently dangerous or has dangerous propensities in that it distributes  50,000 volts or 26 watts of electricity to its target subjects for a period of at least five seconds and, as such, can cause permanent injury or death to its target subjects.

72.    DGG Taser owed a duty of reasonable care to foreseeable subject targets of its Taser weapon, such as Decedent, Timothy Bolander, to warn purchasers and users of the inherent dangers and propensities associated with the M26 Advanced Taser; namely the inherent danger and risk of permanent injury and death.

73.    A manufacturer or distributor who has a duty to warn a vendee/user of a product's potential dangers and yet fails to do so may be liable for injuries sustained by foreseeable bystanders, including, and perhaps especially, foreseeable targets of that product. Defendant's duty, moreover, extends not only to the consumers or users of a product; it also extends to foreseeable "bystanders" who come within the range of

Page -10-

danger.

74. DGG Taser breached its duty of reasonable care owed to Decedent, Timothy Bolander by negligently failing to warn purchasers and users of the M26 Advanced Taser weapon. Specifically, DGG Taser failed to warn the City of Delray Beach Police Department and its officers of the inherent dangers and propensities associated with the M26 Taser weapon.

75. As a result, Decedent, Timothy Bolander was killed.

76. As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal representative of the ESTATE OF TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, TASER INTERNATIONAL, INC., whose actions and omissions caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

**COUNT 3      WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES:**

**NEGLIGENT DESIGN, MANUFACTURE, ASSEMBLY OR DISTRIBUTION**

**DEFENDANT AGAINST DEFENDANT TASER INTERNATIONAL**

77.   Plaintiff re-adopts and re-alleges each and every allegation contained before Count I as if fully set forth herein.

78.   This is an action for damages against Defendant TASER INTERNATIONAL for the wrongful death Negligent Design, Manufacture, Assembly or Distribution in respect of the Plaintiffs' decedent, TIMOTHY BOLANDER.

79.   Defendant, Taser International, designed, manufactured, assembled, distributed, marketed and sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of Delray Beach Police Department.

80.   Taser International expected and intended the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach such as persons arrested and/or detained by the Delray Beach Police Department.

81.   Taser International owed a duty of reasonable care to foreseeable subject targets of its Taser weapon, such as Decedent, Timothy Bolander, to design, manufacture, assemble, distribute, market and sell a product which was not unreasonably dangerous.

82.   Taser International breached its duty of reasonable care owed to Decedent, Timothy Bolander in that it negligently designed, manufactured, assembled or distributed the M26 Advanced Taser.

83.   Taser International was negligent in its design, manufacture, assembly or distribution of the M26 Advanced Taser in that it was unreasonably dangerous for its intended purpose of subduing subjects without causing permanent injury or death. Taser International's marketing material, website www.TASER.com, operating manuals and brochures boast the M26 Advanced Taser and other Advanced Taser product lines as incapable of causing permanent injury or death. The Advanced Taser Series Operating Manual states in the very first paragraph under the warning section: "The ADVANCED TASER is a less-lethal weapon. It is designed to incapacitate a target from a safe distance **without causing death or permanent injury**." (Emphasis added). Additionally, training materials contained in a CD ROM provided by Taser International to the City of Delray Beach Police Department, in a document titled Advanced Taser

Page -12-

Summary Q&As states: **"Long term injuries: None. Short term injuries: Minor skin irritation."** (Emphasis added)

84.   The M26 Advanced Taser used on Decedent, Timothy Bolander was unreasonably dangerous because the Taser strike resulted in Decedent, Timothy Bolander's death.  Decedent, Timothy Bolander's death is inconsistent with theM26 Advanced Taser's intended design set forth herein.

85.   As a result of Defendant, Taser International's, negligent design, manufacture, assembly or distribution of the M26 Advanced Taser, Decedent, Timothy Bolander was killed.

86.   As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal  representative of the ESTATE OF  TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, TASER INTERNATIONAL, INC., whose actions and omissions caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

Page -13-

**COUNT 4      WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES: NEGLIGENT DESIGN, MANUFACTURE, ASSEMBLY OR DISTRIBUTION AGAINST DEFENDANT DGG TASER**

87.     Plaintiff re-adopts and re-alleges each and every allegation contained before Count I as if fully set forth herein.

88.     This is an action for damages against Defendant DGG TASER for the wrongful death Negligent Design, Manufacture, Assembly or Distribution in respect of of the Plaintiffs' decedent, TIMOTHY BOLANDER

89.     Defendant, DGG TASER , distributed, marketed and sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of  Delray Beach Police Department.

90.     DGG TASER  expected and intended the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach such as persons arrested and/or detained by the Delray Beach Police Department.

91.     DGG TASER  owed a duty of reasonable care to foreseeable subject targets of its Taser weapon, such as Decedent, Timothy Bolander, to distribute, market and sell a product which was not unreasonably dangerous.

92.     DGG TASER breached its duty of reasonable care owed to Decedent, Timothy Bolander in that it negligently designed, manufactured, assembled or distributed the M26 Advanced Taser.

93.     DGG TASER was negligent in its marketing, distribution, and sales of the M26 Advanced Taser in that it was unreasonably dangerous for its intended purpose of subduing subjects without causing permanent injury or death. DGG TASER's marketing material, website www.TASER.com, operating manuals and brochures boast the M26 Advanced Taser and other Advanced Taser product lines as incapable of causing permanent injury or death. The Advanced Taser Series Operating Manual states in the very first paragraph under the warning section: "The ADVANCED TASER is a less-lethal weapon. It is designed to incapacitate a target from a safe distance **without causing death or permanent injury.**" (Emphasis added). Additionally, training materials contained in a CD ROM provided by DGG TASER to the City of Delray Beach Police Department, in a document titled Advanced Taser Summary Q&As states: "**Long term injuries: None. Short term injuries: Minor skin irritation.**" (Emphasis added)

Page -14-

94.   The M26 Advanced Taser used on Decedent, Timothy Bolander was unreasonably dangerous because the Taser strike resulted in Decedent, Timothy Bolander's death.  Decedent, Timothy Bolander's death is inconsistent with theM26 Advanced Taser's intended design set forth herein.

95.   As a result ofDefendant,DGG TASER's, marketing, distribution, or sales, of the M26 Advanced Taser, Decedent, Timothy Bolander was killed.

96.   As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal  representative of the ESTATE OF TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, DGG TASER, INC., whose actions and omissions caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

**COUNT 5**     **WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES: GROSS NEGLIGENCE AGAINST DEFENDANT TASER**

Page -15-

**INTERNATIONAL**

97.   Plaintiff re-adopts and re-alleges each and every allegation contained before Count I as if fully set forth herein.

98.   This is an action for damages against Defendant TASER INTERNATIONAL for the wrongful/death gross negligence of the Plaintiffs' decedent, TIMOTHY BOLANDER

99.   Defendant, Taser International, designed, manufactured, assembled, distributed, marketed and sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of Delray Beach Police Department.

100.  Taser International expected and intended the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach such as persons arrested and/or detained by the Delray Beach Police Department.

101.  Taser International knew or should have known the M26 Advanced Taser is inherently dangerous or has dangerous propensities to the   intended targets of the product, such as Decedent, Timothy Bolander.

102.  Taser International knew or should have known the M26 Advanced Taser is inherently dangerous or has dangerous propensities in that it distributes 50,000 volts or 26 watts of electricity to its target subjects for a period of at least five seconds and, as such, can cause permanent injury or death to its target subjects.

103.  Taser International owed a duty of reasonable care to foreseeable subject targets of its Taser weapon, such as Decedent, Timothy Bolander, to warn purchasers and users of the inherent dangers and propensities associated with the M26 Advanced Taser; namely the inherent danger and risk of permanent injury and death.

104.  Taser International breached its duty of reasonable care owed to Decedent, Timothy Bolander by negligently failing to warn purchasers and users of the M26 Advanced Taser weapon. Specifically, Taser International failed to warn the City of Delray Beach Police Department and its officers of the inherent dangers and propensities associated with the M26 Taser weapon.

105.  At all times material to this cause, and prior to December 23, 2004, Taser International, either, directly or indirectly, had actual knowledge that the M26 Taser product line sold to the City of Delray Beach had potential to cause permanent injuries and/or death to its subject targets.

Page -16-

106. Despite Taser International's actual knowledge of the potential for its Advanced Taser product line, including the M26 Advanced Taser, to cause permanent injury and/or death to its target subjects, Taser International acted with gross negligence and willful and wanton disregard of the safety and welfare of the general public in that it knowingly and intentionally continued to manufacture, market, advertise, and sell its Advanced Taser Product line, including the M26 AdvancedTaser, as a weapon incapable of causing permanent injury and/or death so as to maximize its sales, profits and Common Stock sales price as reported by NASDAQ at the expense of the health and safety of the public.

107. Taser International's gross negligence and intentional misconduct includes, but is not limited to:

a) Failing or refusing to conduct adequate pre-market and post-market safety testing its Advanced Taser Product line, including the M26 Advanced Taser.

b) Failing or refusing to adequately test the Advanced Taser Product line, including the M26 Advanced Taser, with respect to the weapons likelihood of causing permanent injuries and/or death to target suspects.

c) Failing or refusing to adequately test the Taser Product line, including the M26 Advanced Taser, with respect to the weapons likelihood of causing permanent injury to nerve tissue of target suspects.

d) Failing or refusing to adequately test the Taser Product line, including the M26 Advanced Taser, with respect to the weapons likelihood of causing permanent injury to the sensitive genital area of target male suspects.

e) Failing or refusing to adequately test the Taser Product line, including the M26 Advanced Taser, with respect to the weapons likelihood of causing permanent organ, tissue, and cell damage to target suspects.

f) Intentionally denying and/or downplaying and/or misrepresenting the fact that the Advanced Taser Product line, including the M26 Advanced Taser, had potential to cause permanent injury and/or death to target suspects, despite real world evidence of permanent injury and death caused by its weapon to target suspects.

g) Intentionally denying and/or downplaying and/or misrepresenting the fact that the Advanced Taser Product line, including the M26 Advanced Taser, had potential to cause permanent injury and/or

Page -17-

death to target suspects, despite well established medical and/or scientific evidence documenting risks of permanent injury or death associated with electrical injuries.

h) Intentionally making false representations in distributed training material and operating manuals that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact Taser International had no legitimate studies to back up such claims and despite the fact that real world contradictory evidence of permanent injury and death caused by its weapon to target suspects.

i) Intentionally making false representations in distributed training material and operating manuals that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact  Taser International's own paid for expert opined in a study   dated April 27, 2003, that it is "impossible to accurately calculate how much electrical energy the Advanced Taser delivers into the human body."

j) Intentionally making false representations in distributed training material and operating manuals that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact Taser International's own paid for expert opined in a study dated April 27, 2003, that there is "little accurate information on the mode and magnitude of electricity delivered to the internal organs by electronic weaponry" and the potential for injury "will need to be proven in the course of time after more operational and clinical experience accrues."

k) Intentionally making false representations in distributed training material and operating manuals that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact Taser International's own paid for expert opined in a study dated April 27, 2003, that the Advanced Air Taser "delivers about four times the energy than earlier stun devices and may possibly therefore cause more injury."

l) Intentionally making false representations in distributed trainingmaterial and operating manuals that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser

Page -18-

represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact Taser International's own paid for expert opined in a study dated August 2001 that the Advanced Air Taser injury thresholds and effects of Tasers on the nerves are unknown.

m) Intentionally making false representations in distributed training material and operating manuals that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser represents exposure to itsM26Advanced Taser results in 0% long-term injuries, despite the fact that research in the possession of Taser represents there are no comprehensive studies relating to long term physiological effects on subjects who have been tasered.

n) Intentionally delaying warnings and/or failing to provide adequate warnings to users of its product about the potential for the Advanced Taser product line, including the M26 Advanced Taser, to cause permanent injury and/or death to target suspects, despite the fact it was fully aware of the risks its Advanced Taser product line, including the M26 Advanced Taser, in causing permanent injury and/or death to target suspects well in advance of the December 23, 2004 Taser incident involving Decedent, Timothy Bolander.

108.   All the above actions taken by Taser International were intentional acts specifically directed to keep safety concerns about its Advanced Taser product line, including the M26 Advanced Taser, from decreasing sales of its Advanced Taser product line, devaluing of its Common Stock sales price as reported by NASDAQ, and otherwise harming its financial concerns.

109.   If the representations and warnings concerning Taser International's Advanced Taser Product line, including theM26 Advanced Taser, had been accurate and truthful, such representations and warnings would have dissuaded law enforcement agencies, like the City of Delray Beach Police Department, from purchasing and using its Advanced Taser product line, including the M26 Advanced Taser, on members of the general public such as Decedent, Timothy Bolander.

110.   The aforementioned actions of Taser International constituted knowing and intentional misconduct, and/or conduct undertaken with reckless, willful and wanton disregard for the safety of the public, and such conduct was at all times ratified by Taser International.

111.   As a direct and proximate result of the aforementioned intentional misconduct, and/or conduct undertaken

with reckless, willful and wanton disregard for the safety of the public, Decedent, Timothy Bolander was killed.

112.   As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal  representative of the ESTATE OF  TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, TASER INTERNATIONAL, INC., whose actions and omissions caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

**COUNT 6**      **WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES: GROSS NEGLIGENCE AGAINST DEFENDANT DGG TASER**

113.   Plaintiffs re-adopt and re-allege each and every allegation contained before Count I as if fully set forth herein.

114.   This is an action for damages against Defendant DGG TASER for the wrongful/death gross negligence in

Page -20-

respect of the Plaintiffs' decedent, TIMOTHY BOLANDER

115. Defendant, DGG TASER, designed, manufactured, assembled, distributed, marketed and/or sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of Delray Beach Police Department.

116. DGG TASER expected and intended the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach such as persons arrested and/or detained by the Delray Beach Police Department.

117. DGG TASER knew or should have known the M26 Advanced Taser is inherently dangerous or has dangerous propensities to the   intended targets of the product, such as Decedent, Timothy Bolander.

118. DGG TASER knew or should have known the M26 Advanced Taser is inherently dangerous or has dangerous propensities in that it distributes 50,000 volts or 26 watts of electricity to its target subjects for a period of at least five seconds and, as such, can cause permanent injury or death to its target subjects.

119. DGG TASER owed a duty of reasonable care to foreseeable subject targets of its Taser weapon, such as Decedent, Timothy Bolander, to warn purchasers and users of the inherent dangers and propensities associated with the M26 Advanced Taser; namely the inherent danger and risk of permanent injury and death.

120. DGG TASER breached its duty of reasonable care owed to Decedent, Timothy Bolander by negligently failing to warn purchasers and users of the M26 Advanced Taser weapon. Specifically, DGG TASER failed to warn the City of Delray Beach Police Department and its officers of the inherent dangers and propensities associated with the M26 Taser weapon.

121. At all times material to this cause, and prior to December 23, 2004, DGG TASER, either, directly or indirectly, had actual knowledge that the M26 Taser product line sold to the City of Delray Beach had potential to cause permanent injuries and/or death to its subject targets.

122. Despite DGG TASER's actual knowledge of the potential for its Advanced Taser product line, including the M26 Advanced Taser, to cause permanent injury and/or death to its target subjects, DGG TASER acted with gross negligence and willful and wanton disregard of the safety and welfare of the general public in that it knowingly and intentionally continued to manufacture, market, advertise, and sell its Advanced Taser

Page -21-

Product line, including the M26 AdvancedTaser, as a weapon incapable of causing permanent injury and/or death so as to maximize its sales, profits and Common Stock sales price as reported by NASDAQ at the expense of the health and safety of the public.

123.    DGG TASER's gross negligence and intentional misconduct includes, but is not limited to:

a) Failing or refusing to conduct adequate pre-market and post-market safety testing its Advanced Taser Product line, including the M26 Advanced Taser.

b) Failing or refusing to adequately test the Advanced Taser Product line, including the M26 Advanced Taser, with respect to the weapons likelihood of causing permanent injuries and/or death to target suspects.

c) Failing or refusing to adequately test the Taser Product line, including the M26 Advanced Taser, with respect to the weapons likelihood of causing permanent injury to nerve tissue of target suspects.

d) Failing or refusing to adequately test the Taser Product line, including the M26 Advanced Taser, with respect to the weapons likelihood of causing permanent injury to the sensitive genital area of target male suspects.

e) Failing or refusing to adequately test the Taser Product line, including the M26 Advanced Taser, with respect to the weapons likelihood of causing permanent organ, tissue, and cell damage to target suspects.

f) Intentionally denying and/or downplaying and/or misrepresenting the fact that the Advanced Taser Product line, including the M26 Advanced Taser, had potential to cause permanent injury and/or death to target suspects, despite real world evidence of permanent injury and death caused by its weapon to target suspects.

g) Intentionally denying and/or downplaying and/or misrepresenting the fact that the Advanced Taser Product line, including the M26 Advanced Taser, had potential to cause permanent injury and/or death to target suspects, despite well established medical and/or scientific evidence documenting risks of permanent injury or death associated with electrical injuries.

h) Intentionally making false representations in distributed training material and operating manuals that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser

Page -22-

represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact DGG

TASER had no legitimate studies to back up such claims and despite the fact that real world contradictory

evidence of permanent injury and death caused by its weapon to target suspects.

i) Intentionally making false representations in distributed training material and operating manuals

that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser

represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact  DGG

TASER's own paid for expert opined in a study  dated April 27, 2003, that it is "impossible to accurately

calculate how much electrical energy the Advanced Taser delivers into the human body."

j) Intentionally making false representations in distributed training material and operating manuals

that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser

represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact DGG

TASER's own paid for expert opined in a study dated April 27, 2003, that there is "little accurate

information on the mode and magnitude of electricity delivered to the internal organs by electronic

weaponry" and the potential for injury "will need to be proven in the course of time after more operational

and clinical experience accrues."

k) Intentionally making false representations in distributed training material and operating manuals

that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser

represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact DGG

TASER's own paid for expert opined in a study dated April 27, 2003, that the Advanced Air Taser "delivers

about four times the energy than earlier stun devices and may possibly therefore cause more injury."

l) Intentionally making false representations in distributed training material and operating manuals

that the M26 Advanced Taser is incapable of causing permanent injuries and/or death. Specifically, Taser

represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact DGG

TASER's own paid for expert opined in a study dated August 2001 that the Advanced Air Taser injury

thresholds and effects of tasers on the nerves are unknown.

m) Intentionally making false representations in distributed training material and operating

manuals that the M26 Advanced Taser is incapable of causing permanent injuries and/or death.

Page -23-

Specifically, Taser represents exposure to its M26 Advanced Taser results in 0% long-term injuries, despite the fact that research in the possession of Taser represents there are no comprehensive studies relating to long term physiological effects on subjects who have been tasered.

n) Intentionally delaying warnings and/or failing to provide adequate warnings to users of its product about the potential for the Advanced Taser product line, including the M26 Advanced Taser, to cause permanent injury and/or death to target suspects, despite the fact it was fully aware of the risks its Advanced Taser product line, including the M26 Advanced Taser, in causing permanent injury and/or death to target suspects well in advance of the December 23, 2004 Taser incident involving Decedent, Timothy Bolander.

124.   All the above actions taken by DGG TASER were intentional acts specifically directed to keep safety concerns about its Advanced Taser product line, including the M26 Advanced Taser, from decreasing sales of its Advanced Taser product line, devaluing of Taser International, Inc.'s Common Stock sales price as reported by NASDAQ, and otherwise harming its financial concerns.

125.   If the representations and warnings concerning DGG TASER's Advanced Taser Product line, including the M26 Advanced Taser, had been accurate and truthful, such representations and warnings would have dissuaded law enforcement agencies, like the City of Delray Beach Police Department, from purchasing and using its Advanced Taser product line, including the M26 Advanced Taser, on members of the general public such as Decedent, Timothy Bolander.

126.   The aforementioned actions of DGG TASER constituted knowing and intentional misconduct, and/or conduct undertaken with reckless, willful and wanton disregard for the safety of the public, and such conduct was at all times ratified by DGG TASER.

127.   As a direct and proximate result of the aforementioned intentional misconduct, and/or conduct undertaken with reckless, willful and wanton disregard for the safety of the public, Decedent, Timothy Bolander was killed.

128.   As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death

Page -24-

reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal representative of the ESTATE OF TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, DGG TASER, INC., whose actions and omissions caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

COUNT 7    WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES:
STRICT LIABILITY - FAILURE TO WARN AGAINST DEFENDANT TASER
INTERNATIONAL

129    Plaintiffs re-adopt and re-allege each and every allegation contained before Count I as if fully set forth herein.

130    This is an action for damages against Defendant TASER INTERNATIONAL for the wrongful death strict liability - failure to warn in respect of the Plaintiffs' decedent, TIMOTHY BOLANDER.

131    Defendant, Taser International, designed, manufactured, assembled, distributed, marketed and sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of Delray Beach.

Page -25-

132.    Taser International placed the M26 Advanced Taser into the marketplace knowing it would be used by
        purchasers without inspection for potential defects. Specifically, Taser International expected and intended
        the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach,
        such as persons arrested and/or detained by the Delray Beach Police Department, without inspection for
        defects.

133.    The M26 Advanced Taser, was defective and unreasonably dangerous to the intended targets of the
        product, such as Decedent, Timothy Bolander, and the product was expected to and did reach the City of
        Delray Beach Police Department without substantial change affecting that condition.

134.    The M26 Advanced Taser was defective and unreasonably dangerous because the product did not conform
        to its intended design and failed to perform as safely as the intended design would have performed. More
        particularly stated, M26 Advanced Tasers and other Advanced Taser product lines cause permanent injury
        or death when used on target subjects. The products intended design is to function without causing
        permanent injury or death to its subjects. Taser International's marketing material, website
        www.TASER.com, operating manuals and brochures boast the M26 Advanced Taser and other Advanced
        Taser product lines as incapable of causing permanent injury or death. The Advanced Taser Series
        Operating Manual states in the very first  paragraph under the warning section states: "The ADVANCED
        TASER is a less-lethal weapon. It is designed to incapacitate a target from a safe distance **without causing
        death or permanent injury**." (Emphasis added). (Taser International Advanced Taser Series Operating
        Manual). Additionally, training materials contained on a CD ROM provided by Taser International to the
        City of Delray Beach Police Department, in a document titled Advanced Taser Summary, Q8 As states:
        **"Long term injuries: None. Short term injuries: Minor skin irritation."** (Emphasis added.) (Advanced
        Taser Summary, with Q8 As.)

125.    The M26 Advanced Taser used on Decedent, Timothy Bolander was defective and unreasonably dangerous
        because the Taser strike resulted in Decedent, Timothy Bolander's death. Decedent, Timothy Bolander's
        death is inconsistent with the M26 Advanced Taser's intended design set forth herein.

126.    As a result of Defendant, Taser International's, defective manufacture of the M26 Advanced Taser and its
        subsequent failure to warn purchasers and users of the unreasonably dangerous nature of its product,

Page -26-

Decedent, Timothy Bolander was killed.

137.   As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal   representative of the ESTATE OF TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, TASER INTERNATIONAL, INC., whose actions and omissions caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

COUNT 8       **WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES:**
              **STRICT LIABILITY - FAILURE TO WARN AGAINST DEFENDANT DGG TASER**

123.   Plaintiff re-adopts and re-alleges each and every allegation contained before Count 1 as if fully set forth herein.

139.   This is an action for damages against Defendant DGG TASER for the wrongful death strict liability - failure to warn in respect of the Plaintiffs' decedent, TIMOTHY BOLANDER

Page -27-

140.  Defendant, DGG TASER, designed, manufactured, assembled, distributed, marketed and\or sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of Delray Beach.

141.  DGG TASER placed the M26 Advanced Taser into the marketplace knowing it would be used by purchasers without inspection for potential defects. Specifically, DGG TASER expected and intended the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach, such as persons arrested and/or detained by the Delray Beach Police Department, without inspection for defects.

142.  The M26 Advanced Taser, was defective and unreasonably dangerous to the intended targets of the product, such as Decedent, Timothy Bolander, and the product was expected to and did reach the City of Delray Beach Police Department without substantial change affecting that condition.

143.  The M26 Advanced Taser was defective and unreasonably dangerous because the product did not conform to its intended design and failed to perform as safely as the intended design would have performed. More particularly stated, M26 Advanced Tasers and other Advanced Taser product lines cause permanent injury or death when used on target subjects. The products intended design is to function without causing permanent injury or death to its subjects. DGG TASER's marketing material, website www.TASER.com, operating manuals and brochures boast the M26 Advanced Taser and other Advanced Taser product lines as incapable of causing permanent injury or death. The Advanced Taser Series Operating Manual states in the very first  paragraph under the warning section states: "The ADVANCED TASER is a less-lethal weapon. It is designed to incapacitate a target from a safe distance **without causing death or permanent injury**." (Emphasis added). (DGG TASER Advanced Taser Series Operating Manual). Additionally, training materials contained on a CD ROM provided by DGG TASER to the City of Delray Beach Police Department, in a document titled Advanced Taser Summary Q&As states: "**Long term injuries: None. Short term injuries: Minor skin irritation.**" (Emphasis added) (Advanced Taser Summary with Q&As).

144.  The M26 Advanced Taser used on Decedent, Timothy Bolander was defective and unreasonably dangerous because the Taser strike resulted in Decedent, Timothy Bolander's death. Decedent, Timothy Bolander's death is inconsistent with the M26 Advanced Taser's intended design set forth herein.

Page -28-

145.   As a result of Defendant, DGG TASER's, defective manufacture of the M26 Advanced Taser and its subsequent failure to warn purchasers and users of the unreasonably dangerous nature of its product, Decedent, Timothy Bolander was killed.

146.   As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal  representative of the ESTATE OF TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, DGG TASER, INC., whose actions and omissions caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

**COUNT 9**     **WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES: STRICT LIABILITY- MANUFACTURING DEFECT AGAINST DEFENDANT TASER INTERNATIONAL**

147.   Plaintiffs re-adopt and re-allege each and every allegation contained before Count I as if fully set forth

Page -29-

herein.

148.   This is an action for damages against Defendants TASER INTERNATIONAL and DGG TASER for the
       wrongful death strict liability - manufacturing defect in respect of the Plaintiffs' decedent, TIMOTHY
       BOLANDER

149.   Defendants TASER INTERNATIONAL and DGG TASER designed, manufactured, assembled,
       distributed, marketed and sold its M26 Advanced Taser to law enforcement entities throughout the United
       States, including the City of Delray Beach Police Department.

150.   Defendants TASER INTERNATIONAL and DGG TASER placed the M26 Advanced Taser into the
       marketplace knowing it would be used by purchasers without inspection for potential defects. Specifically,
       Taser International expected and intended the M26 Advanced Tasers to be used by City of Delray Beach
       Police Officers on citizens of Delray Beach, such as persons arrested and/or detained by the Delray Beach
       Police Department, without inspection for defects.

151.   The M26 Advanced Taser, by reason of a manufacturing defect, was unreasonably dangerous to the
       intended targets of the product, such as Decedent, Timothy Bolander, and the product was expected to and
       did reach the City of Delray Beach Police Department without substantial change affecting that condition.

152.   The M26 Advanced Taser was unreasonably dangerous because of a manufacturing defect as the product
       did not conform to its intended design and failed to perform as safely as the intended design would have
       performed. More particularly stated, M26 Advanced Tasers and other Advanced Taser product lines cause
       permanent injury or death when used on target subjects. The products intended design is to function without
       causing permanent injury or death to its subjects. Taser International's marketing material, website
       www.TASER.com, operating manuals and brochures boast the M26 Advanced Taser and other Advanced
       Taser product lines as incapable of causing permanent injury or death. The Advanced Taser Series
       Operating Manual states in the very first paragraph under the warning section states: "The ADVANCED
       TASER is a less-lethal weapon. It is designed to incapacitate a target from a safe distance without causing
       death or permanent injury." (Emphasis added). (Taser International Advanced Taser M-Series Operating
       Manual). Additionally, training materials contained on a CD ROM provided by Taser International to the
       City of Delray Beach Police Department, in a document titled Advanced Taser Summary Q&As states:

Page -30-

"**Long term injuries: None. Short term injuries: Minor skin irritation.**" (Emphasis added) (Advanced Taser Summary with Q&As).

153.    The M26 Advanced Taser used on Decedent, Timothy Bolander was unreasonably dangerous because of a manufacturing defect since the Taser strike resulted in Decedent, Timothy Bolander's death. Decedent, Timothy Bolander's death is inconsistent with the M26 Advanced Taser's intended design set forth herein.

154.    As a result of Defendant, Taser International's, defective manufacture of the M26 Advanced Taser, Decedent, Timothy Bolander was injured in and about his body and extremities, suffered pain therefrom, incurred medical expense in the treatment of the injuries, and suffered, disability, mental anguish, humiliation, embarrassment, and inconvenience; the injuries are either permanent or continuing in nature and Decedent, Timothy Bolander will suffer the losses and impairment in the future.

155.    As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal  representative of the ESTATE OF  TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages

Page -31-

against the Defendants TASER INTERNATIONAL, INC., and DGG TASER whose actions and omissions caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

**COUNT 10       WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES: STRICT LIABILITY- DESIGN DEFECT AGAINST DEFENDANT TASER INTERNATIONAL**

156.    Plaintiff re-adopts and re-alleges each and every allegation contained before Count I as if fully set forth herein.

157.    Defendant, Taser International, designed, manufactured, assembled, distributed, marketed and sold its M26 Advanced Taser to law enforcement entities throughout the United States, including the City of Delray Beach Police Department.

158.    Taser International placed the M26 Advanced Taser into the marketplace knowing it would be used by purchasers without inspection for potential defects. Specifically, Taser International expected and intended the M26 Advanced Tasers to be used by City of Delray Beach Police Officers on citizens of Delray Beach, such as persons arrested and/or detained by the Delray Beach Police Department, without inspection for defects.

159.    The M26 Advanced Taser, by reason of a design defect, was unreasonably dangerous to the intended targets of the product, such as Decedent, Timothy Bolander, and the product was expected to and did reach the City of Delray Beach Police Department without substantial change affecting that condition.

160.    The M26 Advanced Taser was unreasonably dangerous because of its design as the product fails to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer or the risk of danger in the design outweighs the benefits. More particularly stated, M26 Advanced Tasers and other Advanced Taser product lines cause permanent injury or death when used on target subjects. The products intended design is to function without causing permanent injury or death to its subjects. Taser International's marketing material, website www.TASER.com, operating manuals and brochures boast the M26 Advanced Taser and other Advanced

Page -32-

Taser product lines as incapable of causing permanent injury or death. The Advanced Taser M-Series Operating Manual states in the very first paragraph under the warning section states: The ADVANCED TASER is a less-lethal weapon. It is designed to incapacitate a target from a safe distance without causing death or permanent injury. Additionally, training materials contained on a CD ROM provided by Taser International to the City of Delray Beach Police Department, in a document titled Advanced Taser Summary Q&As states: "**Long term injuries: None. Short term injuries: Minor skin irritation**." (Emphasis added).

161. The M26 Advanced Taser used on Decedent, Timothy Bolander was unreasonably dangerous because of a design defect since the Taser strike resulted in Decedent, Timothy Bolander suffering death. Decedent, Timothy Bolander's death is inconsistent with the M26 Advanced Taser's intended design set forth herein.

162. As a result of Defendant, Taser International's, defective design of the M26 Advanced Taser, Decedent, Timothy Bolander was killed.

163. As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

Page -33-

WHEREFORE, LIDIA BOLANDER, as Personal  representative of the ESTATE OF  TIMOTHY

BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages

against the Defendant, TASER INTERNATIONAL, INC., whose actions and omissions caused the Plaintiffs'

decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and

further demand a trial by jury on all issues so triable.

**COUNT 11:      VIOLATION OF 42 USC § 1983 (POLICY, CUSTOM OR USAGE OF CITY OF DELRAY**

**BEACH) AGAINST DEFENDANT DELRAY BEACH**

164.    Plaintiffs re-adopt and re-allege each and every allegation contained before Count I as if fully set forth

herein.

165.    This is an action by all Plaintiffs for damages against the CITY OF DELRAY BEACH for the deprivation

of Plaintiff's decedent TIMOTHY BOLANDER'S Fourth Amendment and Fourteenth Amendment rights in

violation of 42 USC § 1983.

166.    At all times material hereto, the employees, agents and/or officers of the Defendant, CITY OF DELRAY

BEACH, including the officers named as defendants herein were acting under the color of state law and

pursuant to the policy, custom and/or usage of the City of DELRAY BEACH Police Department. The CITY

OF DELRAY BEACH created and allowed a policy, custom or usage whereby its police officers arrested

individuals without probable cause, used excessive force when conducting those arrests, and failed to give

proper medical treatment to suspects that had been placed in custody and required medical treatment

including Plaintiff's decedent TIMOTHY BOLANDER. The CITY OF DELRAY BEACH created and

allowed a policy, custom or usage whereby it failed to adequately supervise, discipline and train their

employees, agents and officers including the named defendant police officers in the appropriate use of

force. The CITY OF DELRAY BEACH, through its policy, custom or usage, also hired officers who were

substandard and who were not properly trained and disciplined including OFFICERS CASAREZ and

HYNES.

167.    The CITY OF DELRAY BEACH created and allowed a policy, custom or usage wherein its police officers

failed to intervene to stop other officers from using excessive force in arresting suspects including

Plaintiff's decedent TIMOTHY BOLANDER. The CITY OF DELRAY BEACH created and allowed a

Page -34-

policy, custom or usage wherein superior officers in the City of DELRAY BEACH Police Department failed to intervene to stop subordinates from using excessive force in arresting suspects including Plaintiff's decedent TIMOTHY BOLANDER.

168.    The CITY OF DELRAY BEACH'S failure to supervise its officers, to discipline its officers, to properly train its officers, to properly hire and retain officers, and its failure to prevent the use of excessive force during arrests, constitutes deliberate indifference, willful conduct, and knowing conduct towards the public in general and specifically towards Plaintiff's decedent TIMOTHY BOLANDER.

169.    The employees, agents and officers of the Defendant, CITY OF DELRAY BEACH, including the named defendant police officers, through their above-described actions, deprived Plaintiff's decedent TIMOTHY BOLANDER of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be secure in their persons against unreasonable seizures including the use of excessive force.

170.    As a direct and proximate foreseeable result of the Fourth Amendment violations and misconduct of the employees, agents and police officers of the Defendant, CITY OF DELRAY BEACH, as set forth herein, Plaintiff's decedent TIMOTHY BOLANDER suffered injuries which caused his death.

171.    The employees, agents and police officers of the Defendant, CITY OF DELRAY BEACH, through their actions described above, deprived Plaintiff's decedent TIMOTHY BOLANDER of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizure and those fundamental rights of due process, liberty and life as guaranteed by the Constitution.

172.    As a direct, proximate and foreseeable result of the Fourteenth Amendment violations and misconduct of the employees, agents and police officers of the Defendant, CITY OF DELRAY BEACH, as set forth above, Plaintiff's decedent TIMOTHY BOLANDER suffered injuries which caused his death.

173.    As a direct and proximate result of the above-mentioned violations of Plaintiff's decedent TIMOTHY BOLANDER'S constitutional rights in accordance with the policy, custom or usage of the CITY OF DELRAY BEACH, Plaintiff's decedent TIMOTHY BOLANDER suffered physical injury, pain, suffering,

Page -35-

emotional distress, disability and death.

174.     As a result of Plaintiff's decedent TIMOTHY BOLANDER'S injury and death, the Plaintiffs are entitled to recover all damages allowed by Florida law and all damages allowable for violation of 42 USC § 1983 including compensatory damages, all costs incurred in prosecuting this action and attorney's fees pursuant to 42 USC § 1988.

WHEREFORE, all Plaintiffs including LIDIA BOLANDER, as Personal   representative of the ESTATE OF TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, CITY OF DELRAY BEACH, for the   constitutional violations, civil rights violations and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, costs and attorney's fees and further demand trial by jury on all issues so triable.

**COUNT 12:     VIOLATION OF 42 U.S.C. § 1983 AGAINST OFFICER FRANK CASAREZ**

175.     Plaintiffs re-adopt and re-allege each and every allegation contained before Count I as if fully set forth herein.

176.     This is an action by all plaintiffs for damages against Defendant, OFFICER FRANK CASAREZ ("CASAREZ"), for deprivation of Plaintiff's decedent TIMOTHY BOLANDER's Fourth Amendment and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.

177.     At all times material hereto, Defendant, CASAREZ, was acting under color of State law as well as pursuant to the policy, custom or usage of the Defendant, CITY OF DELRAY BEACH, his employer.

178.     Defendant, CASAREZ, through his actions described above, deprived Plaintiff's decedent TIMOTHY BOLANDER of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be free from unreasonable seizures and excessive force against his person. This Defendant also failed to provide medical care to Kimbrough, and failed to stop other Officer's from using excessive force against Plaintiff's decedent TIMOTHY BOLANDER.

179.     The Defendant, CASAREZ, through his actions described above, deprived Plaintiff's decedent TIMOTHY BOLANDER of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful

Page -36-

seizure and those fundamental rights of due process, life and liberty as guaranteed by the Constitution.

180.   As a direct and proximate and foreseeable result of the violations of the Fourth and Fourteenth Amendments and the misconduct of Defendant, CASAREZ, as set forth above, Plaintiff's decedent TIMOTHY BOLANDER suffered injuries which caused his death.

181.   As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed by Florida law and for violation of 42 U.S.C. § 1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. § 1988.

182.   The Plaintiffs are also seeking punitive damages against Defendant, CASAREZ, because the conduct set forth above constitutes deliberate indifference, willful conduct and intentional conduct towards the public in general and specifically Plaintiff's decedent TIMOTHY BOLANDER and this conduct caused injuries which caused his death.

WHEREFORE, all Plaintiffs, including LIDIA BOLANDER, as Personal   representative of the ESTATE OF  TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against Defendant, GREGORY, whose constitutional violations, civil rights violations and misconduct caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, punitive damages allowed by law, attorney's fees and costs hereof and further demand a trial by jury on all issues so triable.

**COUNT 13:**   **VIOLATION OF 42 U.S.C. § 1983 AGAINST OFFICER STEVEN HYNES**

183.   Plaintiffs re-adopt and re-allege each and every allegation contained before Count 1 as if fully set forth herein.

184.   This is an action by all Plaintiffs for damages against Defendant, OFFICER STEVEN HYNES ("HYNES"), for deprivation of Plaintiff's decedent TIMOTHY BOLANDER's Fourth Amendment and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.

185.   At all times material hereto, Defendant, HYNES, was acting under color of State law as well as pursuant to the policy, custom or usage of the Defendant, CITY OF DELRAY BEACH, his employer.

186.   Defendant, HYNES, through his actions described above, deprived Plaintiff's decedent TIMOTHY BOLANDER of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be free from unreasonable seizures and excessive force against

Page -37-

his person. This Defendant also failed to provide medical care to Kimbrough, and failed to stop other Officer's from using excessive force against Plaintiff's decedent TIMOTHY BOLANDER.

187.   The Defendant, HYNES, through his actions described above, deprived Plaintiff's decedent TIMOTHY BOLANDER of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizure and those fundamental rights of due process, life and liberty as guaranteed by the Constitution.

188.   As a direct and proximate and foreseeable result of the violations of the Fourth and Fourteenth Amendments and the misconduct of Defendant, HYNES, as set forth above, Plaintiff's decedent TIMOTHY BOLANDER suffered injuries which caused his death.

189.   As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed by Florida law and for violation of 42 U.S.C. § 1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. § 1988.

190.   The Plaintiffs are also seeking punitive damages against Defendant, HYNES, because the conduct set forth above constitutes deliberate indifference, willful conduct and intentional conduct towards the public in general and specifically Plaintiff's decedent TIMOTHY BOLANDER and this conduct caused injuries which caused his death.

WHEREFORE, all Plaintiffs, including LIDIA BOLANDER, as Personal   representative of the ESTATE OF  TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against Defendant, STEVEN HYNES, whose constitutional violations, civil rights violations and misconduct caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, punitive damages allowed by law, attorney's fees and costs hereof and further demand a trial by jury on all issues so triable.

**COUNT 14:     WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES AGAINST CITY OF DELRAY BEACH**

191.   Plaintiff re-adopts and re-alleges each and every allegation contained before Count I as if fully set forth herein.

Page -38-

192. This is an action for damages against Defendant CITY OF DELRAY BEACH for the wrongful death of the Plaintiffs' decedent, TIMOTHY BOLANDER.

193. As a direct and proximate result of the negligent and intentional acts of the employees, agents and police officers of the Defendant, CITY OF DELRAY BEACH, for the acts and omissions described above, including the use of excessive force, the failure to stop other officers from using excessive force and the failure to provide medical treatment to Mr. TIMOTHY BOLANDER, the Plaintiffs' decedent, TIMOTHY BOLANDER, suffered fatal injuries.

194. That the CITY OF DELRAY BEACH is vicariously liable for the negligent and intentional acts of its employees, agents and police officers.

195. As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal  representative of the ESTATE OF  TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, CITY OF DELRAY BEACH, whose negligence caused the Plaintiffs' decedent's injuries and

Page -39-

death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

**COUNT 15:** **WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES AGAINST OFFICER FRANK CASAREZ**

196.    Plaintiffs re-adopt and re-allege each and every allegation contained before Count I as if fully set forth herein.

197.    This is an action for damages against Defendant FRANK CASAREZ ("CASAREZ") for the wrongful death of the Plaintiffs' decedent, TIMOTHY BOLANDER

198.    At all times material hereto, Defendant, CASAREZ, was acting under color of State law and under color of his authority as a police officer.

199.    As a direct and proximate result of the negligence of Defendant, CASAREZ, as described above, the Plaintiffs' decedent, TIMOTHY BOLANDER, suffered fatal injuries. CASAREZ' actions were negligent and/or in bad faith, with malicious purpose and in a manner exhibiting wanton and willful disregard of human rights.

200.    As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for mental pain and suffering from the date of injury.

e. Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has paid them.

f. The decedent's personal representative may recover for the decedent's estate the following:

1. The loss of prospective net accumulations beyond death reduced to present value.

Page -40-

2. Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, LIDIA BOLANDER, as Personal representative of the ESTATE OF TIMOTHY BOLANDER, deceased, for the benefit of the Estate of his statutory survivors, demand judgment for damages against the Defendant, FRANK CASAREZ, whose negligence caused the Plaintiffs' decedent's injuries and death and for all compensatory damages allowed by law, attorney's fees, the costs hereof, and further demand a trial by jury on all issues so triable.

**COUNT 16:    WRONGFUL DEATH ACTION PURSUANT TO § 768.16 - 768.26, FLORIDA STATUTES AGAINST OFFICER STEVEN HYNES**

201.    Plaintiff re-adopts and re-alleges each and every allegation contained before Count 1 as if fully set forth herein.

202.    This is an action for damages against Defendant OFFICER STEVEN HYNES ("HYNES") for the wrongful death of the Plaintiffs' decedent, TIMOTHY BOLANDER

203.    At all times material hereto, Defendant, HYNES, was acting under color of State law and under color of his authority as a police officer.

204.    As a direct and proximate result of the negligence of Defendant, HYNES, as described above, the Plaintiffs' decedent, TIMOTHY BOLANDER, suffered fatal injuries. HYNES'S actions were negligent and/or in bad faith, with malicious purpose and in a manner exhibiting wanton and willful disregard of human rights.

205.    As a result of the Plaintiffs' decedent's death, the Plaintiffs are entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages, to-wit:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and services from the date of decedent's injury to his death with interest and future loss of support and services from the date of death and reduced to present value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

d. Children of the decedent may recover for lost parental companionship, instruction, guidance and for

Page -41-

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury.

THE LAW OFFICES OF WILLIAM D. TUCKER, P.A.
Attorney for the Plaintiff
718 N.E. 2nd Avenue
Fort Lauderdale, FL 33304
telephone: 954.453.4500
facsimile: 954.453.4507

By _____
WILLIAM D. TUCKER, ESQ.
Florida Bar No.: 856753

Z:\BOLANDER\LITIGATION\Pleadings\_first amended complaint filed 8-17-2007.wpd

Page -44-

# EXHIBIT A

6-27-2002 letter from
TASER INTERNATIONAL, INC.,
to
THE CITY OF DELRAY BEACH POLICE
DEPARTMENT

Page -43-



7860 E  McClain Drive, Suite 2 * Scottsdale, Arizona * 85260 * 480-991-0797 * Fax 480-991-0791 * www taser com

6-27-02
Patsy J Nadal  Buyer
City of Delray Beach Police Department
To whom it May Concern,

This letter is to confirm TASER[R] International, Inc is the sole source manufacturer of the less lethal ADVANCED TASER M26 Model 44000, AIR TASER Model 34000, Model 34001, Model 34100, Model  34120 and custom attachable laser sight, Model  34700

TASER  International  is  also  the  sole  source  manufacturer  of  the  patented,  15-foot  Air Cartridges, Model 34200, 34202, 34228 and the patented, 21-foot Air Cartridges, Model 44200, 44202, and 44228.  The Air Cartridges are required for the unit to function in the remote TASER mode.

Below are just some of the unique features the ADVANCED TASER has that are not found with other TASERs:

*   The ADVANCED TASER is the only less-lethal weapon that can stop an aggressive, focused, combat trained attacker

*   The ADVANCED TASER directly stimulates motor nerve and muscle tissue, causing incapacitation regardless of mental focus, training, size, or drug induced dementia.

*   The ADVANCED TASER comes with an on-board memory chip to download 585 past firings based on the time and date the unit was fired to protect officers from unfounded charges of misuse of force.

*   The ADVANCED TASER has over 99.9% field effectiveness rating.

*   The M26 is available with an option to remotely fire the Air Cartridge from underneath a rifle, robot, tactical mirror on a pole, camera, etc

*   The ADVANCED TASER uses the exact same hand motions and muscle memory as standard 9 mm semi-automatic pistols, drastically reducing the amount of time required to train.  User training and Instructor training materials are all on CD rom for ease of reproduction for training

*   Propulsion System for air cartridge is compressed nitrogen (1800 lbs/in$^2$).

Also, unique is the fact that we here at TASER International, Inc automatically add your agency as an additionally insured party to our $5,000.000 per occurance product liability insurance when you purchase the M26 ADVANCED TASER.

**The Sole Authorized Police Distributor in Florida & Georgia is:**



From: Russel Stender 9047818194  To  Buyer Patsy J Nadai          Date 6/27/2002  Time  11 15 08 AM

**DGG TASER, Inc.**
**10034 Plank Lane**
**Jacksonville, FL  32220**
**904-781-8184 Phone**
**904-781-8194 Fax**
**dggtaser@aol.com E-mail**

Please note the ADVANCED TASER[R] , AIR TASER[R] and TASER[R] are registered trademarks
TASER-Wave[TM] is a trademark of TASER International Inc   Patent  U S. 5,078,117 and others
pending in the U.S. and Worldwide.   Copyright 1999 TASER International, Incorporated

Please contact me at 480-905-2006 with any questions.

Sincerely,

Stephen D. Tuttle
Director of Government & Law Enforcement Affairs

≈JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Lidia Bolander

**DEFENDANTS** Taser International, Inc., DGG Taser, Inc., The City of Delray Beach, Frank Casarez & Steven Hynes

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

William D. Tucker, Esq.

Attorneys (If Known)

Fred H. Gelston, Esq.
Douglas J. Petro, Esq.

**(d)** Check County Where Action Arose: ☐ DADE   ☐ MONROE   ☐ BROWARD   ☑ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   ☐ HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

8C789   DTKH/JMH
07CV80789   RICHS

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☑ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding   ☑ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity)

42 USC 1983 Excessive Force Law Enforcement

LENGTH OF TRIAL via 10 days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):   JUDGE   DOCKET NUMBER

DATE 08·30·07

SIGNATURE OF ATTORNEY OF RECORD   Fred H. Gelston

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT 390   APPLYING IFP

49 of 49

723/34